UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET M. SMITH,

    Plaintiff,

v.

RELIANT GROUP DEBT MANAGEMENT
SOLUTIONS,
RG FINANCIAL,
RELIANCE EXCHANGE GROUP LLC,
ROSEN MANAGEMENT SERVICES INC.,
JUQUETTA DUGGANS,
FREDERICK ROSS,
DARRELL HOLMES,
DANIEL ROUSE
TRIESTEN JOHNSON,
ROMAN KUTIKOV,
ILYA KLIPNINISTER
TAHIR KHUDAYAROV
WILLIE IVY,

    Defendants.
_____/

Case No. 16-10325

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT [64]**

Before the Court is Plaintiff Margaret Smith's ("Plaintiff's") motion for entry of default judgement on her complaint brought pursuant to the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692; the Telephone Consumer Protection Act ("TCPA), 47 U.S.C. § 227 and 47 C.F.R. 16.1200; the Michigan Occupational Code ("MOC"), M.C.L. § 339.901; and Michigan Collection Practices Act ("MCPA"), M.C.L § 445.251.  (Second Amend. Compl.; Dkt. 56.)  August 1, 2018, the Court held a hearing on the motion.  Defendants did

not attend the hearing and have otherwise failed to respond or appear in this action. For the reasons explained herein, the Court will GRANT Plaintiff's motion for default judgment.

I.  BACKGROUND

Plaintiff filed her original Complaint on February 1, 2016 against three defendants, Reliant Group Debt Management ("Reliant Group"), Tori London (who Plaintiff later terminated from the suit), and a John Doe. (Dkt. 1.) Plaintiff filed an amended Complaint on March 7, 2017 adding the others defendants who remain part of this matter. The parties Plaintiff added at that time and that Plaintiff now seeks default judgments against are, RG Financial ("RG"), Reliance Exchange Group, LLC ("Reliance"), and Rosen Management ("Rosen"). Plaintiff asserts these three companies, along with the originally named Reliant Group, operate a common joint venture to collect debts from consumers. Also added in the Amended Complaint are the individual owners, operators and/or managers of the four companies (Reliant Group, RG, Reliance, and Rosen), Frederick Ross ("Ross"), Juquetta Duggans ("Duggans"), Darrell Holmes ("Holmes"), Triesten Johnson ("Johnson"), Roman Kutikov ("Kutikov"), Ilya Klipninister ("Klipninister"), Tahir Khudayarov ("Khudayarov"), Daniel Rouse ("Rouse"), and Willie Ivy ("Ivy"). These nine individuals and four companies collectively are the remaining defendants (collectively "Defendants") in this matter. Plaintiff filed a Second Amended Complaint (Dkt. 56) on January 6, 2018, adding additional defendants that Plaintiff subsequently terminated from the suit.

Plaintiff effectuated service on each of the Defendants. Duggans received personal service for herself, Reliant Group, and RG on May 3, 2017. (Executed Certs. of Service; Dkts. 16-18.) Kutikov's summons, the server left with an adult named Lenny at his home address on May 4, 2017. (Executed Cert. of Service; Dkt. 20.) Ivy received personal

service on May 6, 2017 at his residence where the server gave the summons to his stepson who did not provide a name. (Executed Cert. of Service; Dkt. 19.) On May 21, 2017, the server left the Ross summons and complaint with a person at the residence who refused to provide his name. (Executed Cert. of Service; Dkt. 21.) On June 1, 2017, Rouse received personal service at his residence. (Executed Cert. of Service; Dkt. 28.) Khudayarov received personal service on June 3, 2017 at his residence where his adult daughter accepted the summons and complaint. (Executed Cert. of Service; Dkt. 30.)

On June 8, 2017 the Court granted in a text order Plaintiff's motion to extend the summonses and for alternative service. (Mot. for Alt. Service, Dkt. 29.) Service was effectuated on the remaining five defendants (Reliance, Klipninister, Rosen, Johnson, and Holmes) through a combination of postings at known addresses, delivery via First Class U.S. Mail, and delivery to known email addresses. (Executed Cert. of Service; Dkt. 33, 39, 40, 41, and 44.)

Defendants did not answer the complaint, and Plaintiff requested clerk's entries of default as to all thirteen defendants, which were entered on June 2, 2017 (for Reliant Group, RG, Duggans, Ivy, and Kutikov), on August 2, 2017 (for Ross, Rouse, Khudayarov, and Reliance), and on September 5, 2017 (for Rosen, Johnson, Klipninister, and Holmes). Plaintiff's motion for entry of default judgment seeks to recover statutory damages, economic damages, and anticipates to request attorney fees following the resolution of the matter. (Pl. Mot. for Default J.; Dkt. 64.) The Court held a hearing on Plaintiff's motion on August 1, 2018; Defendants did not appear.

The Court deems the allegations of Plaintiff's Second Amended Complaint admitted and additionally considers the testimony given at the August 1, 2018 motion hearing.

During the hearing, Plaintiff testified to the truth of the facts contained in her complaint, Plaintiff provided more details of her interactions with Defendants, and provided a telephone log which tracked nineteen calls she received from Defendants. Plaintiff also elaborated on the significant emotional distress that resulted from her interactions with Defendants and the resulting need for treatment.

It is undisputed that Plaintiff is a "consumer" as defined under FDCPA 15 U.S.C. § 1692a(3). (Compl. ¶ 31, Dkt. 56.) Although she denies any liability or knowledge of the alleged debt that is the subject of this suit, it is undisputed that the alleged debt is consumer debt as defined by the FDCPA. Defendants, Reliance, RG, Reliant Group, and Rosen, all regularly collect debts and are "debt collectors" as defined under FDCPA 15 U.S.C. § 1692a(6) and "collection agencies" as defined under MOC. Plaintiff asserts Reliance, RG, Reliant Group, and Rosen operate a common joint venture, sharing office space, phones, internet, personnel, management, clients, funding, and other resources to collect debts from consumers[1]. (Compl. ¶34-35, Dkt. 56.)

Plaintiff explained at the hearing that she received a series of calls from a woman named Tori London[2] ("London") attempting to collect an alleged consumer debt ("Debt")

---

[1] Many pages of Plaintiff's complaint describes the overlaps among these four companies ascertained through a series of subpoenas and FOIA requests. The parallel websites, phone numbers, P.O. Boxes, actual addresses, and email addresses adequately prove these companies operate out of the same location, that the same individual purchased website domains for all of them, that the companies share P.O. box locations, and a common physical address.

[2] Plaintiff believes Tori London is a fictitious name for Artalia Ward who Plaintiff voluntarily dismissed in June 2018 from this suit.

from her[3]. Plaintiff disputed the debt with London at the time and continues to dispute the debt now, certain she never owed this money. The substance or frequency of the early calls (or call) are unknown to the Court, only that Plaintiff was sufficiently concerned with them that she contacted an attorney for advice. The attorney suggested she track future calls and provided Plaintiff a "Telephone Collection Log" which she entered into evidence at the August 1, 2018 hearing and which details the date, time, duration, and substance of nineteen phone calls over six days. The Court has no information regarding the calls prior to the tracking.

According to the first entry on Plaintiff's Telephone Collection Log, on May 20, 2015, Plaintiff received three phone calls from London stating Plaintiff needed to pay a settlement of the Debt. Two of the calls threatened legal action, including providing a case number. Plaintiff testified that in one of these calls she intentionally misled London, indicated a willingness to pay the debt, solely in an attempt to gather more information about the Defendants.

On May 21, 2015, London responding to Plaintiff's ruse, emailed Plaintiff information about the Debt. The email ("Email"; Dkt. 64-7) provides basic facts about the Debt. It lists the original lender as Paragon Funding, and states that the contract date for the debt was July 12, 2008, that the original balance due was $2,200 and that the present settlement balance due would be $1,312, plus $10 processing fee. The email additionally states "[t]his confirmation letter serves as your written verification for the terms of this agreement that have been authorized on the above referenced debt." (Dkt. 64-7.) No part of the letter

---

[3] The alleged debt is for $2,200.00. The listed original lender is Paragon Funding with a contract date of "2008-07-12." (Dkt. 64-7, at 1; PgID 976.)

informs Plaintiff of her rights to dispute the debt. Tori London is the signatory to the email which also lists a phone, fax, and P.O. Box numbers. No other information identifying the debt collection company, not even a company name, is provided. Plaintiff subsequently dropped her deception, when she prevented any payment from going through to Defendants.

On May 22, 2015, London called, asserted Plaintiff had committed a felony, and stated that Plaintiff needed to call London back before noon. (Second Amend. Compl. ¶ 22; Dkt. 56.) Later that morning another individual called, informed Plaintiff a civil lawsuit sat in her office and stated she would file the lawsuit against her. (*Id.* at ¶ 23.) In response, Plaintiff emailed (on 5/22/2015), faxed (on 5/26/2015), and mailed through the U.S. Postal service (on an unknown date) a response letter disputing the validity of the Debt, requesting verification of the Debt, and requesting the company cease further collection and contact until the verification of the Debt was provided. (*Id.* at ¶ 24.) In reply to the letter, London called Plaintiff again still attempting to collect the Debt. Plaintiff's log shows that London, or her co-workers, attempted to contact Plaintiff a total of twelve times on May 22, 2015. (*Id.* at ¶ 26.) On one of those twelve attempts, Defendants left a message on Plaintiff's work colleague's voicemail, stating they were attempting to collect a debt from Plaintiff.

On May 26, 2015, London called Plaintiff four additional times attempting to collect the Debt and each time stating that Plaintiff had committed a felony. Plaintiff testified, and the log supports, that London stated she was outside the local county Sheriff's Office and was about to walk in to get a warrant for Plaintiff's arrest.

6

In total, Defendants contacted Plaintiff a minimum of 20 times. Nineteen times in the week beginning May 20, 2015 through May 26, 2015, as are tracked in detail in Plaintiff's Telephone Collection Log, plus at least one additional prior call which instigated Plaintiff to secure counsel's advice and the subsequent tracking of the calls. (*Id.* at ¶ 29.) Plaintiff asserts she has never received a written statement save the single email on May 21, 2015. The email does not state her rights to dispute the liability or meet the standards required in the FDCPA.

Plaintiff alleges that Defendants' actions constitute willful violations of federal and state law, and she asks this Court to provide statutory damages in the amount of $129,500 plus attorney fees and costs[4]. The $129,500 amount represents: (1) statutory damages of $1,000 pursuant to FDCPA, 15 U.S.C. § 1692k(a)(2)(A); (2) actual damages of $25,000 under FDCPA, 15 U.S.C. § 1692k(a)(1); (3) three times actual damages under MOC, M.C.L § 339.916(2) of $75,000 (or in the alternative under MCPA, M.C.L § 445.257(2)); and (4) damages equal to $28,500 for willful violation of TCPA, 47 U.S.C. §227 (calculated as 19 calls x $1,500).

II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 allows the court to enter a default judgment against a defendant who has failed to plead or otherwise defend against an action. Once the clerk's office enters a default, all of a plaintiff's well-pleaded allegations, except those relating to damages, are deemed admitted. *Antoine v. Atlas Turner,* Inc., 66 F.3d 105, 110

---

[4] Plaintiff's attorney intends to submit within 14 days of entry of Default Judgment a motion for attorney's fees and costs in accordance with Federal Rule of Civil Procedure 54(d) and under FDCPA pursuant to 15 U.S.C. § 1692(k)(a)(3).

(6th Cir. 1995); Ford *Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. June 9, 2006) (Cleland, J.). After a court determines that a default judgment should be entered, the court will determine the amount and character of the recovery awarded. *See* Wright & Miller, 10A Federal Practice & Procedure, § 2688 (3d ed. 1998) (collecting cases). The Court may either enter a default judgment in a certain amount, or conduct a hearing to determine the appropriate amount of damages. Regardless, under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Federal Rule of Civil Procedure 55 states,

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or to otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk - on the plaintiff's request, with an affidavit showing the amount due - must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to:
>
>> (A) conduct an accounting;
>>
>> (B) determine the amount of damages;

> (C) establish the trust of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed. R. Civ. P. 55.

Here, all criteria are met under Fed. R. Civ. Pro. 55(b). Defendants did not attend the hearing and have otherwise failed to respond or appear in this action, thus Plaintiff's allegations are uncontested. *See Jones v. Portfolio Recovery Assocs.*, No. 16-14061, 2017 WL 5162256, at *1 (E.D. Mich. Nov. 7, 2017) (holding that a default judgment is merely an admission of the facts in the complaint which themselves must be sufficient to establish liability as a basis for recovery of damages). "Fed. R. Civ. P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect." *Cross*, 441 F. Supp. 2d at 848. The Court will accept as true the facts pleaded in Plaintiff's Second Amended Complaint and testified to at the August 1, 2018 hearing.

III. DISCUSSION

The Court's initial inquiry is a procedural one, whether each of the defendants received proper service of process. "Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Russell v. Tribley*, No. 10-14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) (collecting cases). *See also O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353-55 (6th Cir. 2004) ("Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties. . . .Therefore, if service of process was not proper, the court must set aside an entry of default.") (citations omitted).

Plaintiff provides proofs of service confirming that each of the Defendants have received proper service, either in accordance with the Federal Rule of Civil Procedure, or else in accordance with the Court's order granting alternate service for five of the defendants. (Dkt. 29.) In addition, the Court issued a notice of hearing (Dkt. 66) mailed to each of the Defendants on June 11, 2018. The notices were sent to the best known addresses for the defendants, where the service processors were able to effectuate in person service, or else to the addresses this Court approved in its order granting the motion for alternate service of the complaint. (Dkt. 29.) Only Rouse's notice of hearing came back as undeliverable. (Dkt. 67.) Accordingly, the Court finds that service was proper.

(I) Plaintiff's Claims Under the FDCPA

Defendants have, by their default, admitted all of the allegations of Plaintiff's Second Amended Complaint and have also failed to contest the factual statements Plaintiff made under oath at the August 1, 2018 motion hearing. The FDCPA provides the following provisions which Plaintiff alleges Defendants violated.

15 U.S.C. § 1692c(c) Ceasing Communication states "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." According to Plaintiff's complaint on May 22, 2015, in her email and later in a fax, Plaintiff wrote "I am writing to demand that you stop calling me about the [Debt], as required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c). Please contact me only by mail." However,

Defendants contacted Plaintiff four additional times by phone, four days later on May 26, 2015, in violation of 15 U.S.C. § 1692c(c).

15 U.S.C. § 1692d Harassment or Abuse states "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with any debt. . . .the following conduct is a violation of this section: (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the call number. (6). . . .the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d. Plaintiff convinces this Court she felt harassed, oppressed and abused. She argues in her motion that she "lived in a state of fear and frustration from Defendants' continuous phone calls, even though Plaintiff did not owe the [Debt]." (Dkt. 64, at 12; PgID 704.)

Plaintiff's telephone log shows Defendants attempted to contact her during the middle of her work days, she testified approximately 30% of the calls were to her place of work, and that Defendants contacted her co-worker. On May 22, 2015, Defendants contacted Plaintiff twelve times in just under seven hours and on May 26, 2015, Defendants contacted her four times in under ten minutes. In most of Defendants communications, they threatened either civil or criminal legal actions. The Sixth Circuit has advised that "although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury. . . .Congress has indicated its desire for the courts to structure the confines of § 1692d.' " *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). The Court finds it is both the frequency of Defendants' phone calls and the substances of those calls that are harassing and unfair conduct.

15 U.S.C. § 1692e. False and Misleading Representations states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. . . .(5) The threat to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff asserts that Defendants attempted to hide their identity, essentially using false, deceptive, or misleading representations to do so. Defendants provided Plaintiff an email address, P.O. Box, phone number, and fax number only after she suggested a willingness to pay. London used an alias in her interactions and shielded the company's name from Plaintiff in its entirety. Moreover, Defendants represented that Plaintiff committed a felony, that London was in town, that she was seeking an arrest warrant, and stated "that a civil lawsuit sat in her office and she threatened to file a lawsuit against [Plaintiff]." (Pl. Compl. ¶ 23; Dkt. 56, at 7, PgID 646.) Defendants had no intention of, and did not act upon the threat to file a civil suit, nor to pursue the alleged criminal felony behavior. These threats were false and misleading representations, which violate § 1692e.

15 U.S.C. § 1692g. Validation of Debts states "(a) Notion of debt. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication. . . .send the consumer a written notice containing" the amount, the name of the creditor, thirty day notice to dispute, statement that debt collector will verify a disputed debt, and a statement that debt collector will provide the name and address of the original creditor if different from the current creditor. The email Defendants sent to Plaintiff provides the amount due and the name of the creditor, but does not meet the remaining requirements for this written statement. Defendants thus violated § 1692g as well.

The Court finds that Plaintiff has demonstrated a valid claim under the FDCPA based on (1) Defendants' continued communication after a written request that it cease, (2) the empty threat of a civil suit and accusation of criminal felony, (3) the frequency and substance of Defendants' calls, and (4) the failure to provide a written statement of the debt in compliance with 15 U.S.C. § 1692g(a). *See Rohn v. Commercial Recovery Systems, Inc.*, No. 13-10780, 2013 WL 6195578, at *5-6 (E.D. Mich. Nov. 26, 2013) (finding liability on a motion for default judgment where plaintiff alleged that defendant's representative engaged in a telephone conversation in an attempt to collect a debt and (1) threatened legal action against the plaintiff with no intention or authority to take such actions and (2) never took such action).

Under 15 U.S.C. § 1692k of the FDCPA, a debt collector who violates any provision of the statute is liable for: "(1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;" and "(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a).

The Court concludes that Plaintiff is entitled to statutory damages of $1,000 under § 1692k(a)(2)(A). Plaintiff also requests actual damages of $25,000. Plaintiff's testimony at the August 1, 2018 hearing clarified the significant embarrassment, fear, and anxiety that resulted from Defendants' improper phone calls. Plaintiff's motion for default states "Plaintiff lived in a state of fear and frustration from Defendants' continuous phone calls, even though Plaintiff did not owe the alleged debt. . . .Plaintiff often felt despair and helpless to stop Defendants' conduct - feeling without control of her own life and suffering

repeat and unwanted interactions." (Pl. Mot. D. Judgment; Dkt. 64, at 12; PgID 704.) Plaintiff provided additional materials at the hearing detailing the extent of her emotional suffering, which she elected not to make part of the record. The Court reviewed these additional materials which corroborate Plaintiff's adequate testimony regarding her emotional distress.

A court can award damages for actual damages for emotion distress under the FDCPA. *See Link v. Recovery Solutions Group, LLC*, 17-10844, 2018 WL 1980657 (E.D. Mich. April. 27, 2018) (finding actual damages for emotional distress in the amount of $5,000 under FDCPA where debt collector threatened to imminently come to her home, threatened criminal prosecution and jail time, and where two others testified to witnessing her emotional distress*)*; *Lodge v. Cred X Debt Recovery, LLC*, No. 13-11785, 2013 WL 5934628, at *2 (E.D. Mich. Nov. 5, 2013) (finding actual damages in the amount of $3,000 for plaintiff's 'mental anguish and embarrassment' appropriate) (citing *Harding v. Check Processing, LLC*, No. 10-2359, 2011 WL 1097642, at *2-3 (N.D. Ohio March 22, 2011) ("holding that where the record is limited as to support for non-economic damages, $5,000 sufficiently compensates a plaintiff for emotional distress suffered as a result of improper debt collection under the FDCPA")).

The Court finds that Plaintiff has established sufficient facts to support her claim for actual damages for emotional distress. Defendants threatened Plaintiff with a civil lawsuit for a debt she did not owe. Further, someone claiming to be in the vicinity of her home asserted she would immanently have an arrest warrant against her. This alone would be enough to make any individual anxious and frightened. Even in *Hett v. Bryant Lafayette and Assoc., LLC*, where a plaintiff failed to submit "any medical records, telephone records,

14

witness affidavits or other evidence to substantiate claims [of mental distress] damages," the court awarded $2,000 in such damages stating the court must be circumspect in awarding them. *Hett v. Bryant Lafayette and Assoc., LLC*, No. 10-12479, 2011 WL 740460, at *3 (E.D. Mich. Feb. 24, 2011). Here, however, Plaintiff has introduced her own credible testimony as well as the contemporaneous notes of Defendants' extremely disturbing calls. Thus the Court awards Plaintiff $5,000 in emotional damages. Although Plaintiff claims $25,000, the Court finds this lesser amount will adequately compensate Plaintiff for the emotional harm she suffered in the approximately one week span of Defendants' actions.

    (ii) Plaintiff's Claims Under the TCPA

The TCPA was "enacted in an effort to address a growing number of telephone marketing calls and certain telemarketing practices that Congress found to be an invasion of consumer privacy." *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562, at *6 (E.D. Mich. June 29, 2010). In pertinent part, the TCPA regulates the use of automated telephone equipment, which is defined as "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Relevant to Plaintiff's TCPA clam here is § 227(b)(1), which provides, in pertinent part that: "(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . .(iii) to any telephone number assigned to a paging service, cellular

telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

In order to establish a prima facie TCPA case for calls made to a cellular phone, Plaintiff must show that: "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient." *Pugliese*, 2010 WL 2632562 at *7.

All of Plaintiff's well-pleaded allegations are deemed admitted. *Cross*, 441 F. Supp. 2d at 846. Plaintiff pleads in her Amended Complaint ¶ 127- 130, that Defendants "[a]t all times material and relevant hereto. . . .used its automatic telephone dialing systems to call [Plaintiff] on her cellular phone to attempt to collect an alleged consumer debt." (Pl. Amend. Compl. ¶ 129; Dkt. 56, at 24; PgID 663.)

Plaintiff's testimony, offered at the hearing, corroborates that all of Defendants' calls used the automatic telephone dialing system. Plaintiff additionally testified that 70% of Defendants' calls, approximately fourteen of the twenty confirmed calls, came to her cell phone. The other six calls she received at her place of work. Plaintiff affirmatively states she "never gave [Defendants] permission to call her cell phone number." (*Id.* at ¶ 131 - 132.) Plaintiff thus adequately asserts Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by making numerous phone calls to Plaintiff's cellular phone using an automatic telephone dialing system without Plaintiff's consent.

"The TCPA does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Section 227(b)(3) provides, "[i]f the court finds that the defendant willfully or

knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3). "[T]he intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Alea London Ltd.*, 638 F.3d at 776. Plaintiff contends that Defendants made the phone calls to her cell phone knowing she had not consented to the use of the automatic telephone dialing system. (Pl. Amend. Compl. ¶ 135-136; Dkt. 56, at 24; PgID 663.)

Plaintiff testified that she requested no further contact from Defendants' in each of her phone calls. Plaintiff additionally establishes that on May 22, 2015, she emailed a letter to London at 10:50am, which disputes the Debt and specifically states "I am writing to demand that you stop calling me about the above-referenced debt." (Pl. Letter to London; Dkt. 64-8, at 1; PgID 977.) "In order for Plaintiff to prove that defendants knew that they acted in a manner that violated the statute. . . .Plaintiff must. . . .show that the Defendants knew that Plaintiff did not consent to the phone calls." *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012); *see also Duchene v. Onstar, LLC*, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016) (Plaintiff need only plead that Defendant was made aware of /notified Plaintiff did not consent to calls from Defendant.) The Court concludes that Plaintiff has established that Defendants knowingly violated the TCPA by continuing to place automated calls to Plaintiff's cell phone after Plaintiff had asked that such communications cease both on the phone and subsequently in writing.

The TCPA provides for a right of action and permits a party to recover actual monetary loss for a violation of 47 U.S.C. § 227(b)(1)(A), "or to receive $500 in damages

17

for each such violation , whichever is greater." 47 U.S.C. § 227(b)(3)(B). *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012). "The TCPA is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]." *Alea London Ltd.*, 638 F.3d at 776 (11th Cir. 2011). Where a plaintiff establishes that the defendants violated the statute knowingly the Court may, in its discretion, award treble damages, equal to $1,500 for each such violation. 47 U.S.C. § 227(b)(3). The Court awards Plaintiff $1,500 for each of the 14 phone calls she received on her cell phone. Under the TCPA, Plaintiff is entitled to statutory damages of $21,000 ($1500 x 14 phone calls).

(iii) Plaintiff's Claim under MOC

Plaintiff claims in her Amended Complaint that Defendants violated the MOC, which mirrors may of the provisions of the FDCPA listed above. Like the FDCPA, MOC regulates the practice of debt collection.

Plaintiff alleges that Defendants violated the following provisions of the MOC: (1) M.C.L. §§ 339.915(n), which prohibits using a harassing, oppressive, or abusive method to collect a debt; (2) M.C.L. §§ 339.915(e) which prohibits making an inaccurate, misleading, untrue, or deceptive statement when communicating to collect a debt; (3) M.C.L. §§ 339.915(f) which prohibits misrepresenting the legal status of a legal action being taken, the legal rights of the creditor or debtor, or that nonpayment will result in debtor's arrest, or the seizure of debtor's property; and (4) M.C.L §§ 339.918 which requires a debt collector to provide a notice detailing the consumer's rights under the MOC.    As the Court explained above in its discussion regarding FDCPA, as pertains to M.C.L § 339.915(e), (f), and (n) and M.C.L. § 339.918 Plaintiff has valid claims under MOC. According to the allegations of Plaintiff's complaint which are deemed admitted by default,

18

the Defendants' agent represented that a civil suit was imminent and that Plaintiff was already guilty of a felony, using harassing and abusive methods to collect the Debt. Defendants also failed to provide Plaintiff written notice detailing her rights.

The MOC provides for a private action for damages as follows:

> (1) A person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this article or rules promulgated under the article, may bring an action for damages or other equitable relief.
>
> (2) If the court finds for the petition, recovery shall be in the amount of actual damages or $50.00, whichever is greater. If the court finds that the method, act, or practice was wilful violation, it may award a civil penalty of not less than 3 times the actual damages, or $150.00, whichever is greater and shall award reasonable attorney's fees and court costs incurred in connection with the action.

Mich. Comp. Laws § 339.916.

Damages for emotional distress and mental anguish are generally recoverable as an element of actual damages under Michigan law. *Christie v. Fick*, 2010 WL 716097, at *3 (Mich. Ct. App. March 2, 2010) ("damages for mental distress are allowable as part of the plaintiff's actual damages."). As discussed previously, Plaintiff has adequately plead emotional damages equal to $5,000. The Court additionally concludes, for the reasons previously stated "that the method, act, or practice was [a] wilful violation" and Plaintiff is therefore awarded treble damages under the MOC totaling $15,000.

### IV. Conclusion

For the reasons thus stated, the Court GRANTS Plaintiff's motion for default judgment and awards damages in the amount of $1,000 in statutory damages pursuant to FDCPA, $5,000 in actual damages pursuant to FDCPA, $21,000 in statutory damages pursuant to

TCPA, and $15,000 treble damages pursuant to MOC. The total award therefore is $42,000.00.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 8, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 8, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager