UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MARGARET SMITH,

     Plaintiff,

 -vs-

RELIANT GROUP DEBT
MANAGEMENT SOLUTIONS, e*t
al*.,

     Defendants.

Case No. 2:16-CV-10325
Hon. Nancy G. Edmunds
Magistrate Judge: Elizabeth A.
Stafford

## MOTION FOR ATTORNEY'S FEES AND COSTS

For the reasons set forth in the accompanying brief in support, Margaret Smith requests that the Court grant this petition for attorney's fees in the amount of $32,270.00 along with non-taxable costs in the amount of $5,314.07.

Respectfully Submitted,

By:   s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Margaret Smith
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864

SylviaB@MichiganConsumerLaw.Com

Dated: August 27, 2018

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MARGARET SMITH,

     Plaintiff,

 -vs-
                              Case No. 2:16-CV-10325
                              Hon. Nancy G. Edmunds
                              Magistrate Judge: Elizabeth A.
                              Stafford

RELIANT GROUP DEBT
MANAGEMENT SOLUTIONS,
*et al*.,
     Defendant.

## <u>BRIEF IN SUPPORT OF</u><br><u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>

## <u>Issue Presented by Motion</u>

*Whether Ms. Smith is entitled to an award of attorney's fees and costs*

*reasonably incurred in litigating the matter to judgment.*

## <u>Most Appropriate Authority</u>

**<u>Federal Rules</u>**
Fed.R.Civ.P. 54(d)(2)

**<u>Statutes</u>**
FDCPA, 15 U.S.C. §1692k
MOC, M.C.L. §339.916

1

**Cases**

*Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343 (6th Cir.2000)

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)

*Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir.1986)

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Cir.2007)

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)

*Tolentino v. Friedman*, 46 F.3d 645 (7th Cir.), cert. denied, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995)

## Introduction

Margaret Smith, as the prevailing party on her Motion for Default Judgment (R.69) brings this motion under F.R.Civ.P. 54(d) and the Fair Debt Collection Practices Act, 15 U.S.C. §1692k for an award of attorney's fees in the amount of $32,270.00 and costs in the amount of $5,314.07.   With this request, Counsel has taken great care throughout this litigation to delegate tasks to staff billing at lesser rates, has reviewed the time records and adjusted downward accordingly, and has been careful to avoid any unnecessary efforts.

With that as prologue, the time spent prosecuting this case arose largely from one major factor, which appears on the face of the Court's record.   Defendants hid

themselves behind a barrier of PO boxes and false names rendering service time-consuming and expensive.   The inability to identify and locate defendants resulted in motions for alternate service, amendments to the complaint and extensions of the Court's summons.

Thus, after more than two years of litigation, nearly 70 docket entries, two amendments of the complaint, numerous requests for summons extensions and alternate service, and ultimately Default Judgment in her favor, Ms. Smith brings this motion after successfully resolving all claims in the complaint in her favor.

### Summary of Request

Lyngklip & Associates ActionStep............................................................. $32,270.00
Non-Taxable Costs...................................................................................... $5,314.07

========

Total .................................................................................................$37,584.07

## 1.   Background

### a)  Nature of Action.

This fee petition follows entry of judgment in favor of Ms. Smith for her claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"), Telephone Consumer Protection Act ("TCPA"), and Michigan Occupational Code ("MOC"). On August 1, 2018, Ms. Smith appeared for the Court-Noticed Hearing on the motion and testified as to her damages. (R.66.) None of the Defendants appeared.

(R.68.)    On August 8, 2018, the Court granted Plaintiff's Motion, finding that Ms. Smith had successfully pled and established valid claims under the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA") and the Michigan Occupational Code ("MOC"). (R.68.) The Court awarded $1,000 in statutory damages and $5,000 in actual damages pursuant to the FDCPA, $21,000 in statutory damages pursuant to the TCPA, and $15,000 in treble damages pursuant to the MOC – a total award of $42,000.00.    (R.69.)

Ms. Smith now requests an award of attorney's fees and costs as a prevailing party pursuant to the FDCPA, 15 U.S.C. §1692k and MOC M.C.L. §339.916.

### b) *Core Allegations of the Complaint.*

When Ms. Smith filed her second amended complaint on January 6, 2018, there were a total of 17 Defendants named: (1) Reliant Group Debt Management Solutions; (2) RG Financial; (3) Reliance Exchange Group LLC; (4) A.P.E. Processing LLC; (5) Rosen Management Services Inc; (6) Juquetta Duggans; (7) Frederick Ross; (8) Artalia Trenell Ward; (9) Darrell Holmes; (10) Daniel Rouse; (11) Sharif Robinson; (12) Jamal Robinson; (13) Triesten Johnson; (14) Roman Kutikov; (15) Ilya Klipninister; (16) Tahir Khudayarov; and (17) Willie Ivy.

4

(R.56.)   By the time she had completed the necessary service and discovery, she moved for Default Judgment on June 5, 2018 against 13 Defendants.   (R.64.)   By that point she had settled with Sharif Robinson, Jamal Robinson and A.P.E. Processing, LLC (R.62 and R.63) and had voluntarily dismissed without prejudice Artalia Trenell Ward (R.65).

At core, Ms. Smith alleged that these Defendants operated as a common-partnership and made repeated harassing calls to her personal phone lines as well as her work place after she requested that the calls stop.   Further, with each communication, she told them she did not owe the debt, had never borrowed the debt, and requested supporting documentation.   They failed to ever produce any validation documents.   Ms. Smith documented multiple instances of calls to her personal phone and to her work phone and Defendant's use of autodialers.

### c) Service of Process and Default.

Plaintiff encountered immediate difficulty when attempting service of process in this matter – in fact, due Defendants' masked identities, she was not able to effectuate service of any Defendants until multiple extensions of summons, motions for alternate service and early discovery.   By May 3, 2017 she was able to

effectuate service upon Juquetta Duggans, Reliant Group Debt Management Solutions, and RG Financial Services, LLC.  (R.16, R.17, and R.18.)   That same month, she was also able to effectuate service of Willie Ivy, Roman Kutikov, and Frederick Ross.   (R.19, R.20, and R.21.)

And on June 1, 2017 she served Daniel Rouse (R.28) and on June 3, 2017 Tahir Khudayarov (R.30).   And that same month she also served Sharif Robinson (R.31), Jamal Robinson (R.32), Reliance Exchange Group LLC (R.33) and A.P.E. Processing LLC (R.34).   And in July 2017, she also served Ilya Klipninister (R.39), Rosen Management Services Inc (R.40), Triesten Johnson (R.41), and Darrell Holmes (R.44.)

Despite her best efforts and serving discovery specifically for the purpose of identifying and locating her, Ms. Smith was never able to serve Tori London. (R.65.)   She was able to identify her likely true name, Artalia Trenell Ward and another alias she used, Artalia Ward Lewis but little else.

Plain on the face of the docket is the challenge under which Plaintiff labored to identify, locate, and ultimately effectuate service of all of these Defendants.   The record also makes plain that they are affiliated and operate a joint common venture,

successfully designed to put any consumer and even some private investigators through the ringer.   Indeed, Plaintiff filed her complaint in February 2016 and thanks to Defendants' intricate web of aliases and deceit, she was not able to effectuate service upon a single defendant until May 2017 – over a year spent trying to serve these Defendants.   But for the many motions filed to extend summons, open discovery, and serve by alternate means and the attendant discovery tools utilized and described below, Plaintiff could not have effectuated service at all.

### d)  *Private Investigators*

Plaintiff's Counsel attempted to curb costs by investigating the Defendants independently.   After time-spent to no avail, and while the cost-burden of hiring a private investigator initially appeared prohibitive, ultimately On the Lookout Investigations had at its disposal systems and databases to track down the Defendants down sooner and reduce the litigation time-burden.

Especially where Plaintiff's Counsel had already been granted multiple extensions, the cost-benefit analysis militated in favor of hiring On the Lookout Investigations.   And ultimately, but for their efforts, Plaintiff would not have been able to identify, locate, and serve Defendants successfully, as established by the

numerous requests for extension of summons and amendments to the complaint. The private investigator was necessary to bringing this matter to default judgment.

### e) Third-Party Discovery

Also, essential to identifying and locating the necessary parties responsible for Plaintiff's harms were several dozen subpoenas issued to third-party telecommunication companies, internet domain companies, PO Box entities, and even some financial institutions.   Plaintiff sought discovery, both by way of FOIA when applicable and otherwise subpoena and deposition notice from the following third parties regarding addresses at issue in this matter:

- ✓ Regus Duluth for tenant information of address 3235 Satellite Blvd, Bldg 400, Suite 300, Duluth GA 30096.

- ✓ NDI Development for tenant information of address 4500 Satellite Blvd Ste 2320, Duluth GA 30096.

- ✓ Postmaster in Norcross Georgia for account holder information of PO Box 234.

- ✓ Postmaster in Norcross Georgia for account holder information of PO Box 259.   To secure the information, ultimately Plaintiff had to serve a subpoena for the Postmaster's testimony and production of documentation related to PO Box 259, including the application to open, the application to close, file maintenance applications, copies of personal identification attendant to securing a PO Box address,

and any other account holder information.

✓ Postmaster in East Amherst New York for account holder information of PO Box 363.

✓ Postmaster in Loganville Georgia for account holder information of PO Box 712.

Plaintiff sought discovery by subpoena and deposition notice from the following third parties regarding phone numbers at issue in this matter:

✓ ATL Communications for the account holder information of phone number (888) 704-3493.

✓ Dynamic Packet Corp for account holder information of phone number (888) 704-3493[1].

✓ Bandwidth for the account holder information of phone number (678) 667-1621.

✓ Sprint for account holder information of phone number (716) 818-3317.

✓ T-Mobile for account holder information of phone number (678) 702-4012 and phone number (404) 551-6166.

---

[1]   Often times the first party served with a subpoena regarding account holder records of a toll-free number is a wholesale entity that has sold the number to a different entity, which actually holds the relevant account holder information.   So, it's quite commonplace to serve multiple subpoenas upon multiple entities, related to one phone number, before securing the account holder information.

9

✓ Paetec Communications for the account holder information of phone number (800) 791-6807.

✓ RingCentral, Inc for account holder information associated with phone number (888) 215-0254.

Plaintiff also sought discovery by subpoena and deposition notice from the following third parties regarding websites at issue in this matter:

✓ Better Business Bureau-Metro Atlanta, Athens, NE Georgia for the customer service record of Reliance Exchange Group LLC.

✓ GoDaddy.com, LLC for the account holder information of domain name RGFinancialus.com.

Plaintiff also sought discovery by subpoena and deposition notice from the following third-party financial institutions or payment processing entities, in an effort to track down the responsible parties:

✓ Modern Payments for account holder information regarding the Defendants' payment processing activities, through and with, Sharif Robinson, Jamal Robinson and A.P.E. Processing, LLC.

✓ PayPal Holdings, Inc. for account holder information, including full name, address, and phone number associated with account B-*************7819[2].

---

2     Plaintiff's Counsel has redacted the account number for purposes of filing this brief via CM/ECF.   Plaintiff's Counsel will produce the unredacted subpoena upon request by Chambers.

10

- ✓ Regions Bank for account holder information, including full name, address, and phone number associated with account number ************1376.

- ✓ Partner Federal Credit Union for account holder information, including full name, address, and phone number associated with account number ************7181.

- ✓ Wells Fargo Bank, N.A. for account holder information, including full name, address, and phone number associated with account number ************9109.

And lastly, Plaintiff sought discovery by subpoena and deposition notice from individuals that later became Defendants for their part in the whole joint venture of the Defendants collectively:

- ✓ Juquetta Duggans for her testimony and production of documentation, records, and information related to Reliant Group Debt Management Solutions, and/or RG Financial, PO Box 259 Norcross GA, Tori London, phone number (888) 704-3493 and website RGFinancialus.com.

- ✓ Frederick (Rick) Ross for his testimony and production of documents, records, and information related to Reliant Group Debt Management Solutions and/or RG Financial, PO Box 259, Tori London, phone number (888) 704-3493, website RGFinancialus.com, and GoDaddy Shopper ID 13303917.

All of the above-referenced subpoenas were necessary to identifying and

11

locating the responsible parties. Each discovery device issued was considered and directly correlated with the Defendants' conduct.

### f) *Motions to extend summons, open discovery, and for alternate service*

On April 28, 2016, Plaintiff filed the first Motion to Extend the Time for Service, to Open Discovery, and to request Alternate Service. (R.4.) On May 4, 2016, the Court allowed her an additional sixty days to effectuate service of the Defendants and granted her leave to conduct limited discovery to acquire identification and location information. (R.5-2.) However, the Court denied, without prejudice, Ms. Smith's request for alternate service. *Id.*

On June 30, 2016, Plaintiff filed the second Motion to Extend the Time for Service of all Defendants and for Alternate Service. (R.5.) On July 7, 2016, the Court granted her an additional ninety days to effectuate service and to effectuate it by Alternate means. (Exhibit 2 -- *NEF of the text-only order, July 7, 2016*).

On March 2, 2017, Plaintiff requested the re-issuance of summons for Reliant Group Debt Management Solutions, Tori London, and for alternate service of Reliant Group Debt Management Solutions upon Juquetta Duggans. (R.11.) Due to the previously granted discovery, Plaintiff reasonably believed she had learned

enough about the Defendants that she could now effectuate service. *Id*. On March 7, 2017, the Court granted Plaintiff's Motion in full. (R.13.)

By June 5, 2017, following her attempts to serve the Defendants named in the March 7, 2017 First Amended Complaint, Plaintiff moved for an extension of summons and alternate service of A.P.E. Processing LLC, Reliance Exchange Group LLC, Sharif Robinson, Jamal Robinson, Triesten Johnson, Darrell Holmes, Rosen Management Services Inc, Ilya Klipninister, and Tori London for an additional 90 days. On June 8, 2017, the Court granted a 90-day extension of summons and alternate service. (Exhibit 3 -- *NEF of the text-only order, June 8, 2017*).

By July 27, 2017, Darrell Holmes was served and the only Defendant un-served was Tori London. (R.44.) Despite her efforts, Ms. Smith dismissed without prejudice the last unserved Defendant, Artalia Trenell Ward *also known as* Artalia Ward Lewis *also known as* Tori London. (R.65.)

### g) *Amendments to the complaint*

Plaintiff filed her complaint on February 1, 2016. (R.1.) By March 7, 2017, she had filed a First Amended Complaint. (R.12.) And by January 6, 2018, she had filed her Second and final Amended Complaint. (R.56.) The multiple

amendments were necessary due to Defendants' collective use of aliases, po box addresses, and a string of entity names, some articled, some not.   Because of their intentional design to conceal their true identities and locations, Plaintiff was forced to amend the complaint multiple times as she discovered who they were.

### h) Settlement

On July 5, 2017, Defendants Sharif Robinson, Jamal Robinson, and A.P.E. Processing, LLC filed an Answer through their Counsel Ceasar Richbow.   After Plaintiff and those Defendants in particular litigated the case in the due course, including a status conference, a Joint Status Report, a witness list, and after Plaintiff served discovery, they were able to attain resolution of the matter.   (R.62.) Accordingly, Plaintiff has reduced all of the billable time attributable to those Defendants to zero and has not sought recovery of costs attendant to their service, among other things.   (Exhibit 4 – ActionStep Billing Records).

## 2.   Ms. Smith is entitled to an award of reasonable attorney's fees incurred by Sylvia S. Bolos in the prosecution of this action.

### a) Purpose and Standard for Attorney's Fees Under FDCPA.

The FDCPA provides for a mandatory award of attorney's fees to a prevailing consumer, *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir.), cert. denied, 515 U.S.

14

1160, 115 S. Ct. 2613, 132 L. Ed. 2d 856 (1995); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991). These mandatory fees reflect Congress's intent that the Act be enforced by debtor's counsel acting as private attorneys general, *Graziano, id at 113;* see *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).

At the same time, fee awards should encourage counsel to undertake these types of cases and provide compensation which is commensurate with other types of cases. *Zagorski v. Midwest Billing Servs.*, 128 F.3d 1164, 1167; *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). In so doing, courts generally apply the lodestar method in conjunction with a request for fees, *see e.g., Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994); *see Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87-88 (2d Cir. 1998); *Wilner v. OSI Collection Services, Inc.*, 198 F.R.D. 393, 397 (S.D.N.Y. 2001). Courts have observed that "FDCPA plaintiffs seek to vindicate important rights that cannot be valued solely in monetary terms." *Bogner v. Masari Investments, LLC*, 2010 WL 2595273, (D.Ariz.,2010); *Savage v. NIC, Inc.*, No. 2:08-cv-01780-PHXJAT, 2010 WL 2347028, at *3 (D.Ariz. June 9, 2010) (quoting *City of Riverside*, 477 U.S. at 562).

Applying a rule of proportionality "would make it difficult, if not impossible, for individuals with meritorious [FDCPA] claims but relatively small potential damages to obtain redress from the courts." *City of Riverside*, 477 U.S. at 561, 578. (1986). The mandated payment of attorney's fees under the FDCPA serves a punitive purpose. *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir.2000).

### b) The Court's fee determination under the Lodestar standard.

The starting point for this calculation of reasonable attorney's fees award "should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The trial court's exercise of discretion is entitled to substantial deference because the rationale for the award is predominately fact-driven." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir.2008). "This deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

16

### c) *Plaintiff is entitled to recover additional non-taxable costs as a component of the "Attorney's Fee" award.*

In addition to the fees in this case, the Court should award additional "non-taxable" costs as a component of fees for Plaintiff's counsel. *Bryant v. City of Chicago*, 200 F.3d 1092, 1100 n. 3 (7th Cir.2000); *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 54 (D.C.Cir.1987) ("We believe that it would be unduly restrictive to find that neither the general term 'costs of litigation' nor the term 'attorney's fees' includes incidental expenses of attorneys that are routine to all litigation and routinely billed to private clients."); *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir.1984) (travel expenses). Case law permits these awards under the FCRA, which permits recovery of attorney's fees pursuant to a "fee shifting" statute. *Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d 577 (9th Cir. 2010).

Under fee shifting statutes, a prevailing plaintiff is not limited to recovery of those costs that would ordinarily be recovered under the federal rules. As such, the Court should permit these additional costs of $5,314.07. (Exhibit 13 – *ActionStep Expense Records*; See Also supporting materials in Exhibits 14 – Exhibits 52).

**3.** **The Court should award $32,270.00 in fees to Ms. Smith's Counsel as a prevailing Plaintiff.**

A calculation of the number of hours reasonably expended can involve consideration of three issues, (1) whether the lawyer actually worked the number of hours claimed, (2) whether the work performed was sufficiently related to the points on which the plaintiff prevailed, and (3) whether the attorney used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. See *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986).

In the course of this litigation, Plaintiff's Counsel and support staff have expended over 227 hours attempting to resolve this case.   The attached billing records provide a chronological listing of those hours, identifying the staff member who expended the time and the amount of time expended.   (Exhibit 4 – *ActionStep Billing Records*).   The work performed was necessary, reasonably related to the file, directed at moving the matter through the legal system expeditiously.

> *a) The Court should grant fees to the prevailing attorney based upon their market rates for the attorney's and support staff involved.*

The party seeking an award of fees bears the burden of demonstrating that the

request is reasonable. See *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).    To determine a reasonable hourly rate for attorney fees, the courts look to the prevailing market rate for similar services of local attorneys with comparable skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). In determining compensation, the Court should look to the fair market value of the services provided by the attorney.   The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience, and skill of the individual attorney.  *Northcross v. Bd. Of Educ.*, 611 F.2d 624, 638 (6th Cir.1979).

Against this backdrop, the Court should grant fees at a rate commensurate with the attorney's own actual rate for comparable work.  *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir.2009).   In this case, Lyngklip & Associates represented Ms. Smith through the successful prosecution of her case.   Few attorneys regularly handle plaintiff's consumer law claims in Michigan, as evidenced by the attorney enrollment for the State Bar of Michigan Consumer Protection Section (Exhibit 5 – *State Bar of Michigan Section Membership Demographics*; See Also, Exhibit 6 – *Attorney*

*Income and Billing Rate Summary Report*; Exhibit 7 – *Attorney Fee Survey Report*) and the Michigan membership roster with the National Association of Consumer Advocates, which is the trade group for consumer protection attorneys.   (Exhibit 8 – *National Association of Consumer Advocates*).   Fewer still handle these claims in federal court with any degree of regularity.

Lyngklip & Associates fosters an environment of continued legal education, community involvement and participation in the broader legal communities.   Each staff member is required to participate in the Lyngklip & Associates in-house training seminars weekly.   Beyond those training seminars, staff also participate in nationally-sponsored webinars and conferences, lectures, and boot camps both locally and nationally.   (Exhibit 9 – *Declaration of Sylvia S. Bolos*; Exhibit 10 – *Declaration of Laura Branco*).

Additionally, staff members participate in presentation of consumer-oriented organizations and training within their own professional groups.   *Id*.   Each of the following current staff members has provided a declaration concerning their qualifications in support of this fee petition.

20

**Attorney Sylvia S. Bolos**

Associate Attorney Sylvia S. Bolos, a licensed Attorney since 2014 and a consumer-protection practitioner for two years, has already distinguished herself as a litigator of Consumer cases, especially FDCPA matters.   And prior to her transition to the Lyngklip & Associates firm, she maintained an accomplished and successful Accounting and Budget career.   Ms. Bolos held several senior-level positions during her seven years with the Department of Defense, including her Accounting position within the Managerial Accounting Office ("MAO") of the Tank and Armament Command ("TACOM") and her Budget Analyst position within the Program Executive Office ("PEO") of Ground Combat Vehicles ("GCS").   She was also integral to the Base Realignment and Closure ("BRAC") of the Managerial and Budget Accounting Office of the Rock Island Arsenal, including the temporary duty ("TDY") assignment to the Rock Island Arsenal to draw those operations to a close and move them to TACOM.   Prior to her roles within the Department of Defense, Ms. Bolos also spent three years as an in-house Accountant for several corporations.   And prior to her career in Accounting, Budget, and Finance, spanning a total of 11 years, Ms. Bolos worked in the banking industry for five years.   All told, her experience apart and aside from litigation, spanning 16 years in total, has uniquely prepared her and developed within her a skillset tailored to litigation of consumer protection matters.

And as Ms. Bolos continues to hone her expertise in FDCPA litigation, she has also earned speaking engagements at national conferences, including the Fair Debt Collection Practices Act Conference of 2016 and 2017 and the upcoming Consumer Rights Litigation Conference of October 2017.   Ms. Bolos was recently asked to serve as co-chair to the Federal Bar of Michigan's Rise Committee.   And the State Bar of Michigan has also published her article on collecting FDCPA Judgments.   (Exhibit 9 – *Declaration Sylvia S. Bolos*).

**Paralegal Laura Branco**

Lead Paralegal Laura Branco has fours of experience and has participated in several continuing education courses.   Further, she was the lead paralegal and essential to the effort of securing satisfaction of judgment in both the *Bryant* and *Green* matter.   Additionally, she has assumed a leadership role in both local and state-wide paralegal organizations.   She is also now responsible for the training and development of three subordinate paralegals.   (Exhibit 10 – *Declaration Laura Branco*).

The declarations of the attorneys and staff of Plaintiff's Counsel, along with the fee survey supports the requested billing rates.   (Exhibit 12 – *Billing Rate Table*). Accordingly, Ms. Smith requests that the Court grant fees at the nominal billing rates set forth in this petition.

> b) *The lodestar calculation yields a reasonable attorney's fee in light of Defendants tactics to avoid detection and evade service.*

The refusal of Defendants to accept service and meaningfully participate in the litigation has resulted in this disproportionately large amount of time expended in litigation of this matter which Plaintiff's Counsel regrettably must submit to the Court for resolution.   Included with this petition, Plaintiff's Counsel has provided a breakdown of the time and amount attributable to each biller on the case, along with their relative contributions as a percentage of the overall bill.   (Exhibit 4 – *ActionStep Billing Records*).   This breakdown reflects an appropriate distribution

22

of work allocated to staff and supervised by the managing attorney on the file, Sylvia

Bolos.  The work was overall supervised by Senior Partner Ian Lyngklip[3].  These

amounts are reasonable and appropriate in light of the extraordinary efforts by which

Defendants disguised their identities and locations.   Accordingly, the Court should

find the time reasonable and award a lodestar amount consistent with the time sheets.

**4.** **Plaintiff's Counsel has made appropriate adjustments to reflect billing discretion to render the bill reasonable.**

While the reasonable rate multiplied by the reasonable hours renders a

presumptively correct fee, case law yet requires Counsel to exercise billing

discretion. *Hensley, supra*.  In cases such as these that extend over hundreds of

docket items, court appearances, numerous motions to extend summons and for

alternate service and early discovery, the resulting bill – as well as the fee litigation

– may take extraordinary time.   And while the interest of maintaining an

appropriate balance of time expended on the fee petition (see *Coulter, supra* limiting

---

3 Mr. Lyngklip's billable time on the file was 3.30 *before* adjustment.   After adjustment and as requested in this fee petition, his billable time on the file totaled 1.60 hours – less than 1% of the time billed on the file to allow Attorney's and staff billing at lesser rates to conduct the majority of the work, where possible.   (Exhibit 11 – *ActionStep Billing Records Summary by Staff Member*).

fees expended on the fee petition), given the time spent on the file and to ensure the Court has before it a well itemized and audited record, Plaintiff's Counsel has engaged in a line-by-line review of the billing in this case.

Of the hours billed, 227.26, Plaintiff identified 58.06 hours of duplication of efforts and unnecessary work and accordingly reduced the requested billable time to 169.20 hours – netting a 26% reduction of the time billed.   (Exhibit 4 – *ActionStep Time Records*). Plaintiff's discretionary billing reduced the net billables from $43,742.25 to $32,270.00. *Id*. Plaintiff's billing reduction reflects appropriate billing discretion and provides the Court a reasonable check on the overall amount of this petition.

<u>**Conclusion**</u>

In this case, Plaintiff's attorney expended more than 227 hours in bringing this case forward to a conclusion - not including time for preparation of this brief or anticipated time at the attorney fee hearing - to a favorable resolution for her client. Plaintiff's Counsel has engaged in a line-by-line review of the billings and appropriately reduced the billable time for purposes of this fee petition down to 169.20 hours.   Accordingly, Ms. Smith requests entry of $32,270.00 in attorney's

fees and $5,314.07 in non-taxable costs – a net award of $37,584.07.

Respectfully Submitted,

By:   s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Margaret Smith
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: August 27, 2018

## Certificate of Service

I certify that on August 27, 2018, I served this document on the following parties by the means indicated:

| Party | Manner |
|---|---|
| Tahir Khudayarov<br>318 Caswyck Terrance<br>Alpharetta, GA 30022 | First Class U.S. Mail |
| Reliance Exchange Group, LLC<br>2675 Paddock Point Place<br>Dacula, GA 30019 | First Class U.S. Mail |
| Frederick Ross<br>1049 Simonton Glen Dr.<br>Lawrenceville, GA 30045 | First Class U.S. Mail |
| Daniel Rouse<br>3311 Ridge Brook Trl.<br>Duluth, GA 30096 | First Class U.S. Mail |
| Juquetta Duggans<br>482 Dogwood Dr.,<br>NW Lilburn, GA 30047 | First Class U.S. Mail |
| Roman Kutikov<br>591 Mabry Rd.,<br>NE Atlanta, GA 30328 | First Class U.S. Mail |
| Willie Ivy<br>7475 Clipper Cv.,<br>Stone Mountain, GA 30083-86 | First Class U.S. Mail |
| RG Financial Services, LLC<br>428 Dogwood Dr NW<br>Lilburn, GA 30047 | First Class U.S. Mail |
| Reliant Group Debt Management<br>Solutions | First Class U.S. Mail |

26

| 428 Dogwood Dr NW<br>Lilburn, GA 30047 | |
|---|---|
| Rosen Management Services Inc | Electronic mail to:<br>RosenManagmentSerivcesInc@gmail.com<br>Corr.RosenManagementServices@gmail.com |
| Ilya Klipninister | Electronic mail to:<br>RosenManagmentServicesInc@gmail.com<br>Corr.RosenManagementServices@gmail.com |
| Tristen Johnson<br>223 Saint Matins Ln SE<br>Mableton, GA 30126 | First Class U.S. Mail |
| Darrell Holmes<br>104 Club Lakes Pkwy,<br>Lawrenceville GA 30033<br>and;<br>1007 Club Lakes Pkwy,<br>Lawrenceville GA 30044 | First Class U.S. Mail<br>and;<br>Electronic mail to:<br>Darrellhlms7@gmail.com |

Respectfully Submitted,

By:   s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Margaret Smith
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: August 27, 2018

27